IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| ALAINA HARRIS, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: PWG-14-1529 |
| CHERYL LEE-POW, D.C. *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this medical malpractice suit stemming from Defendants' chiropractic care that allegedly caused Plaintiff Alaina Harris to suffer a stroke, Ms. Harris retained Dr. Alan H. Bragman, D.C., a licensed doctor of chiropractic medicine, as her certifying expert. Defs.' Mem. 2, ECF No. 64-1; Pl.'s Opp'n 5–6, ECF No. 67-1. He certifies that Defendants Cheryl Lee-Pow and her solo chiropractic practice, POW-HER Chiropractic, LLC, provided improper care for Plaintiff that caused her injury. Certif. of Merit 1, Compl. Ex. 2, ECF No. 1-3. Defendants have moved to strike Dr. Bragman and his Certificate of Merit and to dismiss the case, on the basis that the expert does not qualify under the "Twenty Percent Rule" stated in Md. Code. Ann., Cts. & Jud. Proc. § 3-2A-04(b)(4).[1] Specifically, Defendants contend that Dr. Bragman "does not comply with his certification that he 'devotes less than twenty (20%) percent of his professional

---

[1] Defendants filed a Motion to Dismiss, ECF No. 64, accompanied by a Memorandum in Support, ECF No. 64-1, as well as a Supplement, ECF No. 66, and a Supplemental Memorandum in Support, ECF No. 66-1. Plaintiff filed an Opposition. ECF Nos. 67 & 67-1. Defendants have not filed a reply, and the time for doing so has passed. *See* Loc. R. 105.2(a). A hearing is not necessary. *See* Loc. R. 105.6.

time annually to activities involving personal injury or medical malpractice litigation." Defs.' Mem. 2. Therefore, Defendants argue, "[t]he Certificate of Merit should be struck and the above-captioned matter should be dismissed because the Certificate of Merit is invalid." *Id.* Alternatively, they ask the Court to "[s]trike Dr. Bragman as the Certifying expert in this matter." *Id*. at 3. As discussed below, the motion to dismiss is not properly before me and will not be considered. Even if it were considered, along with the extrinsic evidence the parties attach to their briefing, it would not have merit because Defendants have not shown that Dr. Bragman devotes more than twenty percent of his professional activities to litigation-related activities. On that basis, I will deny Defendants' motion to strike.

I. **MARYLAND HEALTHCARE MALPRACTICE CLAIMS ACT AND PROCEDURAL POSTURE OF THIS CASE**

The Maryland Healthcare Malpractice Claims Act ("HCMCA")[2] requires that a medical malpractice plaintiff in Maryland file a claim, accompanied by a "certificate of a qualified expert" ("Certificate of Merit" or "Certificate"), in the Health Care Alternative Dispute Resolution Office ("HCADRO") and waive arbitration prior to filing suit in state or federal court. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-2a-04(b); *Breslin v. Powell*, 26 A.3d 878, 880 (Md. 2011); *Carroll v. Konits*, 929 A.2d 19, 25–28 (Md. 2007). The Certificate of Merit is "a certificate of a *qualified expert*" in which the expert "attest[s] to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury." Cts. & Jud. Proc. § 3-2A-04(b)(1)(i)(1) (emphasis added); *see Carroll*, 929 A.2d at 27. Relevantly, to be "qualified," the certifying expert "may not devote annually more than 20 percent of the expert's professional activities to activities that directly involve testimony in

---

[2] The parties agree that Maryland law applies. Defs.' Mem. 10; Pl.'s Opp'n 4.

personal injury claims." Cts. & Jud. Proc. § 3-2A-04(b)(4). This is referred to as the "Twenty Percent Rule." *DeMuth v. Strong*, 45 A.3d 898, 906 (Md. Ct. Spec. App. 2012).

Compliance with the Twenty Percent Rule is "necessary in order to have a proper Certificate," and "'failure to file a proper certificate is tantamount to not having filed a certificate at all.'" *Breslin v. Powell*, 26 A.3d 878, 893, 894 (Md. 2011) (quoting *D'Angelo v. St. Agnes Healthcare, Inc.*, 853 A.2d 813, 822–23 (Md. Ct. Spec. App. 2004)). Thus, "a plaintiff could 'fail to file a certificate of a qualified expert,'" by "filing a certificate of an otherwise qualified expert who devotes more than twenty percent of his professional activities to testimony in personal injury cases." *Id.* at 894. "Because the Certificate is vital, an action in circuit court (or federal court) will be dismissed without prejudice if any of the Certificate's material requirements are not met." *Id.* at 898; *see* Cts. & Jud. Proc. 3-2A-04(b)(1)(i)(1) (stating that claim "shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a [proper] certificate"); *Kinsey v. Women's Surgery Ctr., LLC*, 584 F. Supp. 2d 746, 749 (D. Md. 2008) ("[P]laintiffs must comply fully [with the statutory requirements] or be subject to the mandatory sanction of dismissal without prejudice."). However, if the statute of limitations has run, as it has here, and "[t]he failure to file the certificate was neither willful nor the result of gross negligence," then, "[i]n lieu of dismissing the claim or action, . . . the court shall grant an extension of no more than 90 days for filing the certificate." Cts. & Jud. Proc. § 3-2A-04(b)(1)(ii).

This Court has dismissed claims without prejudice under the HCMCA where the Certificate has been invalid on its face. *E.g.*, *Zander v. United States*, 843 F. Supp. 2d 598, 605 (D. Md. 2012). Yet where, as here, the validity of a Certificate cannot be determined without discovery, complicated issues arise that this Court has not had the opportunity to address. For

example, under the HCMCA, "[d]iscovery is available as to the basis of the certificate," Cts. & Jud. Proc. § 3-2A-04(b)(3)(ii), and consideration of that evidence will not convert the motion to dismiss to a motion for summary judgment, *Hinebaugh v. Garrett Cnty. Mem'l Hosp.*, 51 A.3d 673, 676 (Md. Ct. Spec. App. 2012) (citing *Breslin*, 26 A.3d at 892–95). But no such relevant exception exists in federal court to Rule 12(d)'s requirement that, where "matters outside the pleadings are presented to and not excluded by the court," a Rule 12(b)(6) motion to dismiss must be treated as one for summary judgment and all parties must be given an opportunity to present "all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).[3] This requirement would contravene Maryland substantive law's requirement that "filing a Certificate of an expert that does not meet the requirements of CJ § 3–2A–02 requires dismissal, without prejudice, of the underlying claim, *rather than the grant of summary judgment in favor of the defendant*." *Breslin*, 26 A.3d at 880–81 (emphasis added).

---

[3] Of course, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be filed at any time, *see* Fed. R. Civ. P. 12(h)(3), and "the court may consider extrinsic evidence" on a 12(b)(1) motion. *United States ex rel. Ackley v. Int'l Business Machines Corp.*, 76 F. Supp. 2d 654, 659 (D. Md. 1999) (citations omitted). Yet this Court has determined that the "prefiling requirement" of a valid Certificate under the HCMCA "is most appropriately analyzed under Rule 12(b)(6) and treated as a substantive element of state law, rather than as a lack of subject matter jurisdiction under Rule 12(b)(1)," while noting that "the consideration of matters outside the pleadings converts it to a motion for summary judgment." *Webster v. Simmonds*, No. DKC-03-3306, 2005 WL 14886, at *2 (D. Md. Jan. 3, 2005) (denying motion to dismiss on the face of the Certificate) (citations omitted); *see Hanlin-Cooney v. Frederick Cnty., Md.*, No. WDQ-13-1731, 2014 WL 576373, at *5, *8 (D. Md. Feb. 11, 2014) (dismissing medical malpractice claim under 12(b)(6) for failure to exhaust claim under HCMCA); *Elnadi v. Upinder Singh, DDS, PC*, No. ELH-12-1762, 2013 WL 1855977, at *2–3 (D. Md. 2013) (considering 12(b)(1) motion as a 12(b)(6) motion because "[t]he Maryland Court of Appeals has made clear that certain requirements under the HCMCA . . . are conditions precedent to the filing of a medical malpractice suit in court, but do not constitute a jurisdictional limitation"). Indeed, "HCMCA's preconditions to suit are substantive." *Zander v. United States*, 843 F. Supp. 2d 598, 605 (D. Md. 2012) (acknowledging precedent applying Rule 12(b)(6) standard but applying 12(b)(1) standard in context of Federal Tort Claims Act claim where the application "made little practical difference" because the Court did not consider extrinsic evidence). The parties both address the issue as a motion to dismiss pursuant to Rule 12(b)(6). Defs.' Mem. 9; Pl.'s Opp'n 7–8.

I need not resolve this conflict because Defendants' Motion to Dismiss is not properly before me. I issued a Case Management Order that provides that "[n]o motions may be filed without first seeking a pre-motion conference with the Court." ECF No. 56. I held a conference, at the parties' request, on January 13, 2015, in which we discussed Dr. Bragman's qualifications, but I did not grant Defendant leave to file a motion to dismiss. Rather, I granted "Defendants' request to file a *motion to strike* Dr. Bragman's testimony as a certifying expert pursuant to the 20 percent rule." Ltr. Order, ECF No. 59 (emphasis added). Therefore, I will treat Defendants' motion solely as a motion to strike.[4]

## II.    MOTION TO STRIKE

### A.    The Mathematical Equation

As noted, Dr. Bragman is Plaintiff's certifying expert regarding Defendants' alleged departures from the standard of care Plaintiff should have received. Defs.' Mem. 2; Pl.'s Opp'n 5–6. Dr. Bragman states that he devotes less than 20 percent of his time to litigation-related activities. Pl.'s Opp'n 4 & n.1; Defs.'s Mem. 2. But, as Defendants see it, based on discovery on the subject, Dr. Bragman actually devotes more than 20 percent of his professional time to litigation-related activities, such that the Certificate was invalid, and consequently the Certificate should be struck. Defs.' Mem. 3.

---

[4] Further, it would be futile for Defendants to seek permission at this time to file a motion to dismiss, for the reasons stated in the remainder of this Memorandum Opinion, because as indicated, the record before me does not reflect that Dr. Bragman exceeded the amount of professional time Maryland law permits a certifying or testifying expert to devote to litigation-related activity.

To determine the percentage of time an expert devotes to litigation-related activities, the court "must perform a mathematical equation: [It] must identify those activities that 'directly involve testimony in personal injury claims' (the numerator) and then divide it by those activities that comprise the body of 'professional activities" in general (the denominator).'" *Univ. of Md. Med. Sys. Corp. v. Waldt*, 983 A.2d 112, 121 (Md. 2009) (citation omitted).  The litigation-related activities in the numerator include

> only (1) the time the doctor spends in, or traveling to or from, court or deposition for the purpose of testifying, waiting to testify, or observing events in preparation for testifying, (2) the time spent assisting an attorney or other member of a litigation team in developing or responding to interrogatories and other forms of discovery, (3) the time spent in reviewing notes and other materials, preparing reports, and conferring with attorneys, insurance adjusters, other members of a litigation team, the patient, or others after being informed that the doctor will likely be called upon to sign an affidavit or otherwise testify, and (4) the time spent on any similar activity that has a clear and direct relationship to testimony to be given by the doctor or the doctor's preparation to give testimony.

*Id.* at 121–22 (quoting *Witte v. Azarian*, 801 A.2d 160, 171 (Md. 2002)). As for the denominator,

> for an individual's activities to qualify as "professional activity," the activity must contribute to or advance the profession to which the individual belongs or involve the individual's active participation in that profession. In classifying "professional activities," a distinction must be drawn between the hours spent furthering one's profession versus the hours spent on personal or leisurely pursuits.

*Id*. at 123.  Thus, "reading journals" and "observation of procedures" do not qualify if they are "purely for [the expert's] own personal knowledge and the information gained is not used for any advancement of the field," and the activities do not "involve his own active participation in the field," when the expert has retired from the field.  *Id*. at 126.  Likewise, when a retired medical professional "[d]iscuss[es] patients with former colleagues" or attends a conference without presenting, it is not a professional activity if it is only "to satisfy [the expert's] personal curiosity" and "does not contribute anything to the 'field' or involve his active participation in the field." *Id.*  Nonetheless,

6

requiring "professional time" to advance or contribute to the profession or involve active participation in the profession in some way does not mean "professional time" is limited to active clinical practice. Indeed, the text of the 20 Percent Rule necessarily requires time spent testifying to be included as professional activity.

*Id*. at 124.  Additionally, "[p]eer review of scholarly work" qualifies as professional time, even if it is unpaid, because it "advanc[es] the field." *Id*. at 125–26.

### B.     Dr. Bragman's Time Allocations

The parties present deposition testimony and a sworn affidavit to establish how Dr. Bragman spends his time.  Plaintiff contends that "Defendants did not provide, nor ask in either deposition, any calculation as to how much time Bragman spent on forensics from February 27, 2013 to February 27, 2014," the year leading up to his attestation in the Certificate.  Pl.'s Opp'n 9.  The Court must consider only the expert's "current annual activities." *Waldt*, 983 A.2d at 126 (stating that conference attendance "four or five years before [the expert's] testimony . . . . cannot reasonably be included in the calculation of his current annual activities").  However, it is apparent in his Affidavit—which Plaintiff attached to her Opposition—that Dr. Bragman is considering his current practices and the year prior to the date he provided the Certificate, as he uses the word "currently," refers to his activities in the present tense, and refers to the 2013–2014 timeframe.  *See* Bragman Aff. ¶¶ 3–17, Pl.'s Opp'n Ex. 12, ECF No. 67-15.  Yet, Plaintiff is correct that the two-week time period in which Defendants arranged for surveillance of Dr. Bragman does not reflect his time allotments over the course of a year, as it is one isolated, relatively-brief period that cannot account for fluctuations in the use of his time.  Therefore, I will disregard it.

With regard to his litigation-related activities, Dr. Bragman testified that he reviews 40–50 cases per year to give his opinion, and he often completes his review of a new case in an hour.

Bragman Dep. 10:8–19; 75:5–8, Nov. 12, 2014 ("Bragman Dep. I"), Defs.' Mem. Ex. 2, ECF No. 64-4.  In his affidavit, he stated that he "spend[s] approximately 1-2 hours on the initial review of each."  Bragman Aff. ¶ 14.  This means that, at most, he spends approximately 2 hours reviewing each of 50 cases per year, or 100 hours per year reviewing cases.  The least amount of time he spends is one hour for each of 40 cases, or 40 hours per year.  He stated at deposition that he typically testifies in one deposition per month, spends about eight hours preparing for each deposition, and gives "[a] few hours of deposition testimony."  Bragman Dep. I, at 76:2–4, 114:21 – 115:3.  In his affidavit, he said that he typically spends 4–8 hours preparing and 2–4 hours testifying at a location "5 minutes from [his] home."  Bragman Aff. ¶ 15.  That equates to, at most, approximately 8 hours preparing, 4 hours testifying, and 10 minutes traveling per month, or 146 hours per year.  The least amount would be 4 hours preparing, 2 hours testifying, and 10 minutes traveling each month, or 74 hours per year. He said that he testifies in 2–3 trials per year. Bragman Dep. I, at 77:10–15.  In his affidavit, he stated that he "go[es] to trial two times a year" and "spend[s] under 8 hours preparing for trial."  Bragman Aff. ¶ 16.  That is a total of, at most, 24 hours of trial preparation per year, and at least, 16 hours of trial preparation per year. Thus, it is clear that he spends at least 40 hours per year reviewing cases; 74 hours per year preparing for, traveling to and from, and giving depositions; and 16 hours preparing for trials, for a total of 130 hours per year.  At most, he spends 100 hours per year reviewing cases; 146 hours per year preparing for, traveling to and from, and giving depositions; and 24 hours preparing for trials, for a total of 270 hours per year.

The amount of additional time Dr. Bragman spends on forensic activities is murkier.  He did not say how much time he spends at trials or traveling to and from trials, stating instead that "[t]rial time depends upon the location."  Bragman Aff. ¶ 16.  He did not say how much time he

spends consulting with counsel in preparation for trial or depositions. Bragman Dep. 68:5–7, Jan. 16, 2015 ("Bragman Dep. II"), Defs.' Mem. Ex. 6, ECF No. 64-8. Indeed, he testified that he did not include either time consulting with counsel or travel time in his calculation of litigation-related activity. Bragman Dep. II, at 68:5 – 69:16; Bragman Dep. I, at 75:20 – 76:1. He also said that he did not include the time he spends reviewing the 30–40% of cases he rejects, because then, in his view, he was not preparing to testify. Bragman Dep. II, at 66:10 – 67:8, 68:20 – 70:1. Rather he said that it was his belief that the Twenty Percent Rule applied only to "time directly preparing for testimony." Bragman Dep. I, at 75:20 – 76:1, 86:19 – 87:3.

As for Dr. Bragman's professional activities that are not litigation-related, he testified that he spends 25–30 hours in his clinical practice per week, Bragman Dep. I, at 87:9–16, 114:23, and he stated that he works 48 weeks each year, Bragman Aff. ¶ 6. That is a total of 1200–1440 hours per year. He also testified that he spends 20 hours each year on continuing education. Bragman Dep. I, at 87:17–25. He stated that he devotes one hour per week, or 48 hours per year, to the administrative duties of running his practice as a solo practitioner, Bragman Aff. ¶ 8, and one hour each month, or 12 hours per year, to attending meetings to obtain referrals from other practitioners, Bragman Dep. I, at 106:19 – 107:21, 108:5 – 109:12; Bragman Aff. ¶ 13. Both of these activities "contribute to the profession or involve active participation in the profession in some way," as they enable Dr. Bragman to continue his practice. *See Waldt*, 983 A.2d at 124 (citing *Cornett v. Watauga Surgical Grp., P.A.*, 669 S.E.2d 805, 808 (N.C. Ct. App. 2008), in which the court listed "performing administrative functions, attending conferences, and participating in committee meetings" as professional activities, and *Dawson v. Prager*, 76 Pd. 1036, 1041 (Kan. 2003), in which the court considered "involvement with professional organizations and committees" to be a professional activity, as decisions "in

line" with *Waldt*). As the *Waldt* Court observed, "[a] profession carries with it the concept of a business," *id.* at 123, and that business must succeed for the professional to contribute to his field. Therefore, they are professional activities. *See id.*

As an active practitioner, Dr. Bragman's time spent in attendance at conferences and one hour per workday, or 240 hours per year, spent reading professional journals, Bragman Dep. I, at 90:4–24, both contribute to the profession by informing him as a practitioner. *See Cornett*, 669 S.E.2d at 808 (attending conferences is a professional activity) (cited in *Waldt*). This is unlike in *Waldt*, in which the Maryland Court of Appeals concluded that a retired expert's journal reading was part of his personal, not professional, time, based on the retired expert's testimony that "he d[id] not read journals for any particular purpose other than the fact that he is "interested to know what people are doing today," and he did "not use the knowledge gained through reading journals." 983 A.2d at 126. In *Waldt*, the court also determined that the retired expert's conference attendance did not "contribute[] anything to the profession of medicine," and the retired expert did not "actively participate[] in the profession through this activity," because he "ha[d] not presented at a conference or written a paper for a conference since retiring." *Id.* at 126. Yet, in the circumstances presented here, in which Dr. Bragman is an active practitioner, his conference attendance need not involve presentations or papers to contribute to the profession. Rather, by attending conferences, he can gain knowledge that he can apply in his practice, thereby "contribut[ing] to the profession." *See id.* at 124, 126. However, the amount of time Dr. Bragman spends at professional conferences is unknown. Thus, the evidence shows that Dr. Bragman spends 1200–1440 hours with patients, 20 hours on continuing education, 48 hours on administrative duties, 12 hours attending meetings, and 240 hours reading journals each year, for a total of 1520–1760 hours of non-litigation-related professional activity each year.

In contrast, researching and writing articles that are not for peer-reviewed journals or specifically about chiropractic adjustment, Bragman Dep. I, at 23:1 – 24:7, 29:6–13, 111:1 – 112:16, do not qualify as professional activities. *See Waldt*, 983 A.2d at 125–26 (discussing "[]peer review of scholarly work" as "a vital step in the scientific research process"). Nor do casual discussions with friends and relatives, Bragman Dep. I, at 91:1–6, as they do not advance the field or involve active participation by Dr. Bragman, *see Waldt*, 983 A.2d at 124. Nor is it clear that the presentations and seminars that Dr. Bragman provides to athletic organizations, Bragman Dep. I, at 87:12–14, "contribute to the profession or involve active participation in the profession." *See Waldt*, 983 A.2d at 124. And, although unpaid chiropractic work certainly qualifies as "active participation in the profession," *see id.*, it is unclear how much of the "at least 100-200 hours of volunteer services, which include chiropractic care," Bragman Aff. ¶ 11, actually are chiropractic care.

In sum, Dr. Bragman may spend as little as 130 hours on litigation-related activities other than consulting with counsel and traveling to and from and testifying at trials (the numerator), and he may spend as much as 1,890 hours on professional activities, including litigation-related activities other than consulting with counsel and traveling to and from and testifying at trials (the denominator). With these figures, Dr. Bragman spends less than 7% of his professional time on litigation-related activities other than consulting with counsel and traveling to and from and testifying at trials. Indeed, he would have to spend more than 310 hours consulting with counsel and traveling to and from and testifying at trials for his litigation-related activities to exceed 20% of his professional time.

Alternatively, he may spend as much as 270 hours on litigation-related activities other than consulting with counsel and traveling to and from and testifying at trials (the numerator),

11

and he may spend as little as 1,790 hours on professional activities, including litigation-related activities other than consulting with counsel and traveling to and from and testifying at trials (the denominator).  With these figures, Dr. Bragman spends just over 15% of his professional time on litigation-related activities other than consulting with counsel and traveling to and from and testifying at trials.  Even with these figures, Dr. Bragman could spend 100 hours consulting with counsel and traveling to and from and testifying at trials without exceeding the Twenty Percent Rule.  Thus, Defendants have not shown that Dr. Bragman devotes more than 20% of his professional time to litigation-related activity.  Their motion to strike Dr. Bragman and the Certificate IS DENIED.

   A separate order shall issue.

Dated: April 13, 2015               /S/
                       Paul W. Grimm
                       United States District Judge

lyb